WILLARD LEWIS & al. *versus* THOMAS W. CHADBOURNE.*

Seamen in the mackerel fishery, in the absence of any express contract, are neither partners in, nor part owners of the fish caught during a mackerel voyage.

They have only a pecuniary claim to the proceeds.

ON REPORT.

CASE against the defendant, as sheriff of the county of Lincoln, for the default of his deputy, in not keeping property attached, so that it might be seized and sold on execution.

APPLETON, C. J.—The plaintiffs having sued out a writ against one Dexter Lewis, caused an attachment to be made by Thomas Boyd, a deputy of the defendant, of the debtor's interest or share "in a fare of mackerel caught in the schooner Astoria." Judgment having been rendered in that suit, the execution thereupon issuing was placed in the hands of William Cunningham, a deputy sheriff of Lincoln county, by whom a demand was seasonably made upon the officer serving the original writ, for the property thereon attached. Nothing having been surrendered upon this demand, this action is brought against the defendant for the default of his deputy, in not keeping the property attached, so that it could be given up to the officer having the execution, to be by him seized and sold according to law. ·

If Dexter Lewis had been a sailor for specific wages payable in money, it is obvious enough that he would have had no attachable interest in the mackerel caught upon the voyage.

The general custom, it seems, is for sailors in the mackerel fishery to go on shares. The owners of the vessel have the mackerel, which they or their agents sell, and, after deducting the advances to and the outfits of each, the balance of the share remaining is paid in money. If such was not

* This case has come into the possession of the present Reporter since the issuing of vol. 53.

the bargain, the evidence fails to disclose any interest belonging to Dexter Lewis which could be attached on the writ or sold on the execution. If such was the bargain, the inquiry arises what, if any, interest in "the fare" was attached.

In whaling voyages the sailors usually have a certain lay or share in the proceeds as wages. Their compensation is therefore contingent and dependent upon their success. But they are never regarded as partners, though they may participate in the profits of the voyage. *Reed* v. *Canfield*, 1 Sum., 195; *Mine* v. *Glennie*, 4 M. & S., 240; *Coffin* v. *Jenkins*, 3 Sum., 112. Neither are they tenants in common of what may be caught. *Bishop* v. *Shepherd*, 23 Pick., 492. *The Crusader*, Ware's Rep., 448. Nor can officers and crew join with the owners in a suit for the recovery of the proceeds of the voyage. *Grozier* v. *Atwood*, 4 Pick., 234.

" The men, by their original contract, had no right to their proportion of the oil, and to take it to themselves, but the whole was to be sold, and they were to have their share of the proceeds." *Barney* v. *Coffin*, 3 Pick., 123. The owners of the vessel and the projectors of the voyage are the owners of the product of the voyage. *Baxter* v. *Rodman*, 3 Pick., 439. "The crews claim," observes SPRAGUE, J., in *Taber* v. *Tenney*, Sprague's Rep., 322, " is to a share of the proceeds of the voyage; and they have no property in the oil itself. The contract is, that, out of the proceeds when realized, they shall be paid according to their lays."

It is clear that, in voyages of this description, the sailor has no property in the products of the voyage which can be specifically attached. An officer has therefore no right to attach, for, as is determined in the case last cited, "a seaman in the whale fishery has no property in the oil or bone taken." *Rice* v. *Austin*, 17 Mass., 206.

Now if a similar custom exists in the mackerel fishery, similar results must ensue. Nobody ever supposed that seamen in the mackerel fishery were liable for the debts of the ship or the outfits of the voyage. They are neither

partners in nor part owners of the fish caught. The owners, in the one species of fishery, as well as the other, furnish all the stores, provisions and outfits, and the crew are paid according to the success of the enterprise. "I think," observes SPRAGUE, J., in *Knight* v. *Parsons*, Sprague's Rep., 279, "that, under this contract, the crew are rather to be deemed hired seamen than partners or joint contractors. It has long been decided that, in the whale fishery, the crew have no specific property in the oil, but only a right to the proceeds of the oil; and the contract, in this case, seems to give the owners the right to sell the fish, and the crew have only a pecuniary claim, calculated upon the amount of fish caught."

It is clear, therefore, that the plaintiffs acquired no rights by the supposed attachment of Boyd, and that consequently this action cannot be maintained.

It seems, in whaling voyages, that, if an officer or seaman prefers to have his share in oil specifically, he will be allowed to do so; "but even in this case," remarks SHAW, C. J., in *Bishop* v. *Shepherd*, 23 Pick., 492, "it is clear that he has no property in the oil, until separation and delivery." But, before a seaman would have a right to his specific share of such oil, he should tender the amount due the owners for his proportion of the outfit and advances. Until this was done he could neither equitably nor legally claim a division. *Wait* v. *Gibbs*, 7 Pick., 145.

But, in the present case, there has been no tender of the judgment debtor's proportion of the outfit and advances, nor any division of the mackerel, nor any proof that they were agreed to be specifically divided, nor that it was the wish of any one that they should be so divided.

*Plaintiffs nonsuit.*

CUTTING, KENT, WALTON, BARROWS and DANFORTH, JJ., concurred.

*Ingalls & Smith*, for the plaintiffs.
*Wales Hubbard*, for the defendant.